[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10642
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20442-JAL-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DELVIN DEON TINKER,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 21, 2015)


Before HULL, WILLIAM PRYOR and JULIE CARNES, Circuit Judges.

PER CURIAM:

After pleading guilty, Delvin Deon Tinker appeals his conviction and 180-month sentence for one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).[1]  During a traffic stop of a vehicle in which Tinker was a passenger, a police officer performed a pat-down search of Tinker and found a firearm in Tinker's waistband.  On appeal, Tinker challenges the denial of his motion to suppress the firearm and also his enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).  After review, we affirm Tinker's conviction and sentence.

## I.  MOTION TO SUPPRESS

The district court did not err when it denied Tinker's motion to suppress.  First, the police officers involved in the traffic stop had both probable cause to believe a traffic violation had occurred and also a reasonable suspicion that a crime was being committed.  See United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008) (requiring a traffic stop to be supported by either probable cause to believe that a traffic violation has been committed or a reasonable suspicion that crime is afoot).

Both officers testified that they observed the vehicle swerve and weave as it travelled down an unmarked roadway, even though there were no obstructions in the roadway, and the vehicle did not need to pass another car.  Specifically,

---

[1]Pursuant to a written plea agreement, Tinker entered into a conditional guilty plea, reserving his right to appeal the district court's denial of his motion to suppress.

Detective Jeffrey Parker testified that the vehicle was "swerving off and on the road." Detective Michael Fernando Mendez testified that the vehicle was "weaving in and out of the traffic lane on the street" and that it was "impeding the other lane for" oncoming traffic. While the officers' testimonies differed slightly, they agreed that the vehicle left its own lane and crossed into the lane for oncoming traffic, which is a "noncriminal traffic infraction" under Florida law. See Fla. Stat. § 316.081(1), (5) (requiring vehicles to drive on the right side of the roadway). Moreover, the officers agreed that the vehicle weaved several times and that they stopped the vehicle because they were concerned that the driver might be intoxicated, which is a criminal offense under Florida law. See Fla. Stat. § 316.193 (making it a crime to drive a vehicle while under the influence of alcohol or a controlled substance).

The district court listened to the officers' testimony, weighed their credibility, and determined that the officers were justified in making the stop. Tinker did not present any evidence to controvert the officers' testimony. And, the fact that the officers' testimony was not completely consistent on every detail does not provide a basis for reversing the district court's credibility findings. See United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004) (explaining that this Court will not reverse a credibility finding unless the challenged testimony "is contrary to the laws of nature, or is so inconsistent or improbable on its face that no

3

reasonable factfinder could accept it" (internal quotation marks omitted)). Construing the evidence in the light most favorable to the government and affording deference to the district court's credibility findings, the officers had both probable cause and a reasonable suspicion to initiate the traffic stop. See United States v. Lewis, 674 F.3d 1298, 1303 (11th Cir. 2012).

Additionally, Detective Parker's testimony established that, after the vehicle was pulled over, he had a reasonable suspicion that Tinker was armed and dangerous. See Arizona v. Johnson, 555 U.S. 323, 327, 129 S. Ct. 781, 784 (2009) (concluding that an officer is permitted to conduct a limited search of the outer clothing of a passenger in vehicle during a traffic stop if the officer has a reasonable suspicion that the passenger may be armed and dangerous). Detective Parker testified that the traffic stop occurred in a high-crime area. As Detective Parker spoke to Tinker through the passenger-side window, Tinker appeared nervous, muttered, and would not make eye contact, his right hand was shaking, and his left hand appeared to be holding an object in his waistband. When, at Detective Parker's request, Tinker stepped out of the vehicle, Tinker adjusted the object in his waistband as if to secure it. At this point, Detective Parker asked Tinker to place his hands on top of the vehicle, conducted a pat-down search of his waist area, felt the butt of a gun, and then found a loaded firearm in his waistband.

Based on this testimony, the district court found that, "[a]fter seeing Tinker adjust something in his waistband, Detective Parker immediately ordered Tinker to face the vehicle and place his hands on it."  This finding is not inconsistent with Detective Parker's testimony and Detective Parker's testimony was not so improbable on its face that no reasonable factfinder would accept it.  See Pineiro, 389 F.3d at 1366.  Given the facts as the district court found them, Detective Parker had a reasonable suspicion that Tinker was armed and dangerous based on the totality of the circumstances.  See United States v. Griffin, 696 F.3d 1354, 1359 (11th Cir. 2012) (explaining that the officer does not have to have definitive evidence of a weapon or be certain the defendant is armed to have a reasonable suspicion).  Accordingly, the district court did not err in finding that the pat-down search was justified and constitutional.

## II.  ACCA ENHANCEMENT

Finally, Tinker asserts that the district court misapplied the ACCA's mandatory minimum sentence because his three qualifying prior convictions were neither charged in the indictment nor proven to a jury.  As Tinker acknowledges, however, this Apprendi-based argument is foreclosed by binding precedent.  See Almendarez-Torres v. United States, 523 U.S. 224, 239-47, 118 S. Ct. 1219, 1229-33 (1998) (allowing the district court to consider prior convictions at sentencing); Apprendi v. New Jersey, 530 U.S. 466, 489-90, 120 S. Ct. 2348, 2362 (2000)

5

(expressly declining to overrule Almendarez-Torres); Alleyne v. United States, 570 U.S. ___, ___133 S. Ct. 2151, 2160 n.1 (2013) (declining to revisit Almendarez-Torres); United States v. King, 751 F.3d 1268, 1280 (11th Cir. 2014) (concluding that Almendarez-Torres remains binding precedent).

We note that Tinker has never disputed that his prior Florida convictions—1999 convictions for robbery while using a deadly weapon and aggravated assault with a firearm, a 2010 conviction for resisting an officer with violence, and a 2013 conviction for aggravated battery—constitute "violent felonies" under the ACCA. Moreover, Tinker's predicate offenses appear to qualify as violent felonies under the "elements" clause in § 924(e)(2)(B)(1), rather than the "residual" clause in § 924(e)(2)(B)(ii), and thus Tinker's classification as an armed career criminal does not appear to be affected by Johnson v. United States, 576 U.S. ____, ____ S. Ct. ____, No. 13-7120, 2015 WL 2473450 (June 26, 2015).  In any event, Tinker has never claimed that his predicate offenses are included based on the residual clause and has never raised the constitutional challenge to the ACCA's residual clause asserted by the defendant in Johnson.

For these reasons, we affirm Tinker's conviction and 180-month sentence.

**AFFIRMED.**